May it please the court. My name is Ed Sullivan and I represent the appellant Mick Hewitt. If I could have about two minutes to make a few headline points I would be appreciative and can answer all of the court's questions or at least hope to answer them. First, Helix paid Mr. Hewitt by the day. It didn't matter how long he worked, for any portion of a day he would get a flat sum. Day rate employees are paid by day. Second, the fact that Mr. Hewitt's day rate was over the salary level test of the FLSA does not mean he was paid a salary. There's a salary level test and there's a salary test. This case is about whether Helix can prove it paid Mr. Hewitt on a salary test. Simply because he got an amount of money over the salary level test does not mean it was guaranteed and Helix's entire argument is an example of post hoc ergo proctor hoc fallacy reasoning. Third, Helix did not pay Hewitt on a salary basis under the regulation. An employee paid purely by the day has always been understood to be under the law a day rate employee. From 1940 through the present the DOL has always said an employee paid purely by the day is a day rate employee, not a salary. Salary employee, there are at least seven reasons why Helix cannot meet the regulations under Rule 602. Fourth, Helix's entire argument in this case is essentially because he received a paycheck that was over the minimum salary level test, he was paid a salary. If this court bites on that argument, it will radically restructure the FLSA because hourly employees, commissioned employees, piece rate employees, employees get paid in a variety of and it's over the minimum, therefore he's paid a salary. There's no case that holds that, no cert case at least, and that would be a dangerous unintended consequence of Helix's argument. And then finally, there's an alternate to the salary basis test under 29 CFR 541 604, which says, okay, if you're a daily rate or a shift worker or an hourly worker at some level, your component of your pay is based on those things. If the company pays you a minimum weekly guarantee, and if there's a reasonable relationship between the minimum weekly guarantee and that other form of compensation, then the salary basis test can be established. That fails in this case, certainly applies to regulation, but the main reason is obviously he was not paid a minimum weekly guarantee of pay, and there isn't a reasonable relationship. Helix doesn't even argue that it applies. So I'm happy to take any of the court's questions. I appreciate the time. I'll stop for just a second and I'll just move on to my argument. Okay, I'll keep going. It's difficult with a number of judges here. First, I want to walk you through the regulatory scheme at play here, and I don't want the court to lose sight. The burden of proof is on Helix. They have to prove it paid Mr. Hewitt on a salary basis. That's Allen Tubing 2014 from this circuit. Second, I just want to talk about the scheme from the Department of Labor for a little bit. Salary employees exist, commission, hourly, piece rate, day rate. Each of these types of employees are considered differently. They're paid differently. Please look at the day rate regulation, 778-112. A day rate is a flat sum for a day's work for doing a particular job without regard to the number of hours worked in the day or the job. That's how Helix pay Mr. Hewitt. They want you to read that regulation out. The Department of Labor started in 1940, okay, explained why a day rate is... Sorry, why a salary basis is an important part of the exemptions and why we have the salary basis test. And I will note that the Stein report, it's not in my brief, but I prepared a little for a Stein report for 1940, which was the very first discussion of the salary basis test, pointed out that one of the reasons, and it's in footnote 16 of page five of section four, that one of the reasons that they're including a salary basis, ironically, was based on Shell Oil Company's request of the Department of Labor to include a salary basis, along with Mid-Continent Oil. Seem to have forgotten history here, but it was the oil industry that sought the salary basis test. Mr. Sullivan? Yes, sir. Mr. Higginson, and I, you know, was a panel member. What circuit, if any, would you point us to as the best accurate description of the interplay between 601, 602, and 604B? Huge. Six circuit case. In that case, employees were paid. There was a fact dispute in this case, unlike this case, where we all agree he was paid by the day. In that case, there was a question. The employee was paid by the day, but it was roughly the same amount every week. And the question there was, okay, was that really a matter of grace for the employer? Was that really a salary? It was a matter of right. But that case, that six circuit opinion in Hughes, and it's cited in my brief, is dead on point on the interplay, Judge Higginson, that you asked of all the things I'm pointing out. But it's more important. If this court fights on Helix's argument, they are splitting. You are splitting that circuit, which is fine. It's your right to do. You're an independent circuit, but there's no question that's happening. He would argue, sorry, Helix argues, there's no circuit split. Please read Hughes, because in that case, he did not address the issue in front of us at all. So in Hughes, the argument was whether employees on a pure day rate were paid a guaranteed weekly amount of pay. That's what we have here, Judge Owen, with respect. And in that case, what they said in, I mean, if this court says a day rate over the minimum is a salary, that is going to be a direct split. The question in that case was whether or not there was a weekly guarantee of pay. They ultimately determined there was a fact question based on the unique circumstances of that case. But the reasoning of Hughes applies hand in glove to this case. And for the same reasons, Lips and Anania, which are second and first circuit court of opinions, which you'll hear over from the athletes deal with cases in which employees were guaranteed weekly pay and money over that. Mr. Do I take it from your summary of your argument that you are not taking the position that 604 B is an essential component of determining compensation for purposes of 601? No, I believe 601 as in all the exemptions are subject to rule 604. I think that the reason in Lips and Anania, they said it wasn't, is because those employees received guaranteed weekly pay, whereas 604 doesn't apply to weekly pay. So it's in this case, instead of your client being at will any day diminished any day fire, he was given the same guarantee there you would lose. If your client worked at will, and the testimony evidence didn't show that his employer could diminish his day rate down way low, then you would be more likely than the Anania and Lips Is that fair to say? I believe I believe we're on the same lane, but if they promised him a guaranteed weekly pay, like they did in Lips and Anania 1250 and $1,000 a week, respectively, and paid extra, then you go to 604. But yes, correct. But in this case, there was no guarantee. None. It's not in the record. Would there be an issue with your client's compensation if they simply if he simply took his annual income, divided it by 52 and paid him the same amount every week, or let's say divided it by 12, and paid him once a month, an equal sum. If it's a that is a definition of a salary, it's math. Okay, so you've got it. This is why it wasn't difficult. They could figure out the ultimate amount of money they wanted to pay because it's economics, just law and economics, supply demand. What's a tool pusher worth $200,000? What do we want to pay a tool pusher? Let's divide $200,000 by 12, you know, you know, by, by 2000, whatever you want to do it, come up with a number, the person's guaranteed that number. That's a classic salary. That is how economics, but not just economics, because we have at least three provisions. 601 602 and 604 B that have to be read so as to enter has to be interpreted together. So we do get into the weeds a little bit. And I don't want to suggest that a statute statute is the weeds, but we do have to reconcile those provisions though, aside from the common sense economics, don't we? Yes. But the point of the economics was, this is not a difficult burden for Helix to overcome. This is a burden that they could have paid him a flat sum guaranteed weekly, you know, on a salary basis. Then it's just a question of whether or not if there was extra compensation, whether it met under 604, but that's not what we're talking about here. We are not actually talking about a difficult case. This is an employee who was paid purely by the day. Mr. Sullivan, let me ask you about the option, which may follow up on some of what the other questions are. What is the minimum, the most minor alteration in this payment scheme that Helix used that would satisfy your interpretation? Is it a matter, and I, you know, I'm waving a flag to put it this way, so maybe I shouldn't. Is it a matter of semantics? If Helix had agreed to pay $963, whatever it is, as a weekly salary, and then all the rest of this follows, would that satisfy your suggestion? Is it a matter that they called it a day rate and didn't call it a weekly rate or a weekly guarantee? I'll get south of it. Let me dump the weeds with you here a little bit. We'll hopefully get a mower on some of the grass. If they were paid, just say $964 a week, that may be guaranteed $963 a week, but all the rest of the math that goes with this person's contract apply. Right. Then what happens is, all right, there's a component that's guaranteed. The law instructs you to look at regulation 604B. So then let's look at what is the amount. Why do you look at 604B if, in fact, this is a weekly salary? You don't get a 604 unless you're worried about your salary being computed daily. You have the guarantee of a week. I understood under your hypothetical that there was a guarantee-based minimum, but you said all the other math applied, so I thought that you would get all the other day rates. But under 602, what you have, you don't even have under 604. You don't even have, it seems to me, being... What is the language? The language of time. The guarantee is not calculated on an hourly, daily, or shift basis. The guarantee is calculated on a weekly basis because that's what the contract calls it. Okay. I think what we're missing here is what I'm missing. What I'm missing here, I'm sorry. I apologize. But what I'm missing here is I didn't explain properly that the hourly or shift or the hourly basis is the extra compensation. You have to go to 604B and look at what's guaranteed, what's over the guarantee. Is the employer essentially, is it close enough to make it look like it's still a salary? So if you're just talking about, in the case of Mr. Hewitt, a low guarantee relative to his overall pay, it's never going to satisfy 604B. But if you're saying $200,000 divided by 52 and that's the salary every week, well, you got pay on a salary basis, but that's not what happened. Can I offer a clarifying amendment to the question? It seems to me that what Judge Hewitt is saying is that $200,000 a week period and no discussion of daily pay. It's just $4,000 a week for any week that you work. Okay. That would cover, that would fall easily within 602. Game, set, match. Paid on a salary. You would lose for sure 602. I would not be here and I would not have represented Mr. Hewitt. Exactly. Exactly. Alternatively, I'm sorry. Let me just answer the top of the question. I might follow this. If it's $960 per day, so you do trigger 604B, but part of the arrangement includes not just $960 a day, but don't worry, you will get $4,000 a week minimum. You would also lose because that would be a 604B case, not a 602 case. Is that your point? Yes. If it's guaranteed on a weekly basis. Judge Jones, I'm sorry. I just want to clarify that. I'm sorry. I just had a historical question, Mr. Sullivan. My understanding is that just about everything in the oil patch has been billed on a daily basis from the beginning of time, or at least for 50 years. I just wondered, is Mr. Hewitt the first highly compensated employee who's ever made a claim for overtime? No, he's not. How long has this been going on? When I say highly compensated employee, I mean a person who, but for your argument about day rate, would fall within the plain language of 601. Okay. If you're asking what's going on, I'm telling you he's a labor employment practitioner for 20 years. I know that. The cases get settled in three weeks, which is what this case should have been settled in three weeks. That's what happens when you pay an employee purely by the day. I'm asking you a very specific question. I'm not asking about your 20 years of experience. I'm asking about a person who is a team leader responsible for the development of the well. He has to be there 28 days at a time, and then they have to give him comparable rest periods. So therefore, but for the day rate, he would qualify within 601. How routinely do you handle those cases? I have not handled a case in which an employee made over the minimum day rate prior to this case. Okay. But for the party? Is the McQueen case responsive? That's the California case where essentially it's well-side managers who made, I think maybe more than Hewitt did. The court ruled the same way our panel did, and the party settled as you suggested. Right. There are lots of examples of it too. There's Snead from the Western District. There are tons of cases where day rate employees get salary. But you're right, Judge Jones, like what I want to say, this is why you're right. This is why when I pleaded the case, I said, Hewlett's otherwise satisfies the exemptions, but just like you said, but for the day rate, that's the distinguishing. Well, what I'm saying is I suspect these kinds of fellows in this position have been paid on a daily rate for 50 years or more. And yet this claim is sort of an innovation. Oh, no, no, no. I assure you I would have taken this case 20 years ago if the day rate employees were that high. The issue is this. The Department of Labor addressed this exact issue, Judge Jones, in August of 2020. In the hypothetical, it was $1,500 a day. Well, they were basing themselves on the original panel opinion. But besides that, those are entitled to the extent they persuade. Right. And it's super persuasive that if someone doesn't actually make any component that's guaranteed weekly, they didn't earn a salary. Okay, they earned a day rate. Counselor, can you address the Faludi case and also the District of Colorado case, please? Sure. Judge, all right. Obviously, I know you wrote Faludi 1 and Faludi 2, so I respect the opinion. I disagree with it. I disagree with it for this reason. It didn't look at Rule 602A1, which says that pay has to be without regard to the hours or days worked. That's a critical problem, I think, when you're looking at this regulation. Because here, Mr. Hewitt was paid with regard to the days worked, not without regard. And Mr. Faludi had a written contract, which is absent here. With respect to the Colorado case, the lone case in the entire country on this issue that came out on May 20th, in all honesty, I just viewed it as a judge saying, I just don't like the law. And because I don't like the law... No, it's not the lone case, because the Faludi District Court and the District Court in this case also ruled the same. Your Honor, I do have a response to that, but I see that I'm out of time. If you give me 15 seconds, I'm happy to respond or otherwise pass it on to opposing counsel for his part. Briefly respond. The response on the Faludi case is, I would urge you, Judge Elrod, after Faludi came out, there was a case called Jordan v. Helix. Jordan v. Helix in the District Court that's being stayed, also held by Judge Lake. Judge Lake looked at that and said, yeah, no, I know what I did in Faludi in the District Court opinion, but this is different. Helix is different. There is no written contract here. And he thought there would be a fact question on a guarantee. But that... So even Faludi is distinguishable on those grounds. Thank you, Judge Elrod. Can I briefly clarify the Labor Department opinion? Your view that the Labor Department opinion looked at the Fifth Circuit case and said that the department had no choice but to follow the Fifth Circuit for some weird reason, since there are lots of other circuits that could theoretically do something else, or that they simply agreed with the textual analysis of the Fifth Circuit, but it wasn't any sort of deference to us. It's clearly the latter. I mean, I love the Fifth Circuit, and I'm speaking to them all, but I don't think the Department of Labor are huge fans of the Fifth Circuit in general. Thank you. Mr. McClark, please add two minutes to the Helix energy time. Ms. Price? Thank you, Your Honor. May it please the Court, I'm Carter Crowe. I'm here representing the defendant, Helix. If the Court could give me just a couple of minutes to set my argument and respond to a couple of things that Mr. Sullivan said, I think it may prove efficient. Our position is that Hewitt was exempt under the executive exemption and the highly compensated employee regulation 601. 601 requires that Hewitt must perform at least one of the job duties of an executive, and two, that he must have total annual compensation of at least $100,000. Both of those first two elements are conceded in this case. He concedes that his job duties were exempt job duties, and he concedes that he always made more than twice the threshold amount for the highly compensated employee regulation, yet basically made over $200,000 a year. So the third element under 601 is that he must be paid on a salary basis at least $455 in any week in which he performed any work. This case turns on the salary basis test in Regulation 602A in our view. Regulation 602 requires that the employee must regularly receive a predetermined amount over $455 each pay period on a weekly or less frequent basis. Number two, the predetermined amount must constitute all or part of the employee's compensation. And number three, the predetermined amount must not be subject to reduction because of variations in the quality or quantity of the I believe that the key words are the words all or part of the employee's compensation. All here means that the predetermined amount can be all of the employee's compensation. Alternatively, part of means that the predetermined amount can be only part of the employee's compensation. In other words, less than the entire amount. Other compensation can be paid as well for the pay period and not violate the salary basis test. Here, Helix complied with Regulation 602. Helix paid Mr. Hewitt a predetermined amount, which is always over $455, and that's stipulated. The predetermined amount was paid every two weeks the predetermined amount was part of his compensation, although he was paid more, and the predetermined amount was never reduced for any reason. There was never any reduction or deduction from the predetermined amount, and I believe that's also stipulated in this case. So in this case, there is a debate regarding whether the predetermined amount must be calculated on a weekly basis. I do not see in the Regulation any requirement for a weekly calculation of the predetermined amount in 602. The Regulation instead properly gives the parties freedom to set the predetermined amount according to the requirements of their particular business. In other words, those words, predetermined amount, are generic words to give broad application to the different circumstances that may apply in different industries that are subject to the Act. The Regulation does use the word weekly twice, so let's address this. It uses it first in 602A with regard to the frequency of the pay, meaning that the predetermined amount must be received, is the word used in the Regulation, by the employee on a weekly or less frequent basis. The second time it uses the word weekly is in 602A1, which is just mentioned by Mr. Sullivan. This says that the without regard to the number of days or hours worked. And this last language is the language that has drawn the Court's attention, without regard to the number of days or hours worked. This means, in our view, that the predetermined amount must be paid in any week in which the employee performs any work. In other words, it cannot be reduced if the employee does not work as much time as is anticipated. It does not mean that the predetermined amount must be calculated based on a weekly calculation. The employee's full salary is different from the employee's full compensation. The full salary is the full predetermined amount in 602A, and this is the reduction. Other compensation can also be paid. So it is our view, in this case, that my client always paid that, always paid the predetermined amount that was calculated on a day rate, but at the very lowest, it was $963. If he worked one minute of any week, he was guaranteed to be paid the full amount, and it was never subject to reduction. So that's our, that's my opening, and I'll now address the Court's questions. My name is Tom. I've been looking at 601 and 604. 601 clearly applies to your opponent. He makes nothing but money. He gets a minimum guarantee, no extra. He doesn't, so why doesn't, why don't we stop at 601 since your opponent makes over $200,000 for what amounts to half a year's work? He's 28 on $128, and it is beyond my comprehension that anyone making over $200,000 for working what amounts to half a year will be entitled to time and a half because apples and oranges. What is your response to that? Yes, Judge Wiener. I agree that we fully comply with Regulation 601, which is a highly compensated employee regulation. The text of this regulation does state that the total is paid on a salary or fee basis. So I believe that then, well, when this issue was addressed by the Anani Court and the Lipsch Court, the Second and First Circuits, they said then you look at Regulation 602 that deals with being paid on a salary basis. Again, for the reasons I just explained, I believe that Helix complied with 602 and did pay Mr. Hewitt on a salary basis. You're not quite answering Judge Wiener's question. Well, I'm sorry. I think Judge Wiener's question is, this guy made a lot of money, and I thought I heard your presentation, your very first few sentences. I think you said it's a three-part test, income level, duties, salary basis. Is that correct? It's a three-part test? Yes, that is correct. So if you meet the high-income test only but fail under duties or fail under a salary basis, you agree that you would pay overtime. You just think they were satisfied here. But if they weren't satisfied here, you'd pay overtime. So I believe that my client has fully complied with 601, which is what I was trying to... And now you're not answering my question. I'm sorry. I'm sorry that I'm missing your question. Judge Wiener's question was, Hewitt was paid a lot of money. Yes. Is that alone enough, or do you also have to pass the duties and basis test? So, you know, this raises the issue about whether or not the regulations comply with the statute or exceed the Department of Labor's authority. No, it doesn't. No, it doesn't. Well, I'm just asking a regulatory question. You said at the meeting. If you say that 601 is properly constituted under the Department's authority, then I have to comply with all three parts, and you have to show duties, you have to show high total annual compensation of over $100,000, plus you have to show a salary basis. Okay, so high income can lead to overtime. If it's just high income, but nothing else, no duties or no salary basis. Yes, under this regulation, that's correct. Well, let me follow up on that. 604 is labeled minimum guarantee plus extra, and I want to know where there's a minimum guarantee plus extras here. It just is a straight guarantee for any day that he works, and there are no extras. Am I misreading that? No, Your Honor, our argument is that we do not have to comply with 604 because we've complied with 601 and 602, and you only have to go to 604 if you do not comply with 601 and 602. That was the ruling of the Hughes Court, and they said because the workers in that case, their day rate was not over 455. Their day rate was 337, and as a result of that, the court said there is a question about whether they have complied with 602, and so then they said there is a safety valve basically in 604, and we'll look at 604, and the question there will be was there a guarantee for these workers since they were guaranteed to earn at least 455 in any week? Because their day rate was less than 455, the question then would become how were they scheduled? Would they be scheduled in such a manner such that they always qualified as a guarantee under 604? Again, I don't think that we have to go there. The First Circuit and the Second Circuit has not said we have to go there because in our argument, the day rate was always over 455, so he was always given a predetermined amount under 602 that exceeded 455, and so we don't have to go the safety valve route of 604. What do you say to someone, though, who says that 604 applies to all daily rate workers, regardless of how highly compensated they are, and even has the power to eliminate an exemption if the employee otherwise satisfies the salary-based test? I don't agree with that. If someone said that, I would say no. We don't agree with that because 602 and 604 provide alternative tests. Our view is that we comply with 602, and because we comply with 602, we don't have to go to 604. That was the position taken by the Second Circuit in the Anani case, where they said that in a situation where... Was Anani a weekly case or a daily case? In Anani, the workers were paid a minimum amount that was based on working about 44 hours per week, plus they were paid additional compensation on top of that for the extra hours that they worked. LIPS follows the same reasoning in the First Circuit, and that was a guarantee of $1,000 for any week in which they were basically paid based on the number of hours that they billed, but they got the $1,000 whether they billed any hours or not. Counsel, in response to one of Judge Ho's earlier questions, you were saying, yes, the regulations require three things, including the salary basis. I think you were suggesting the statute itself would allow an exemption just for someone who has high income. Where does the statute provide anything like that? Judge Cost, if I said that, then I misspoke, because I think as this... I was alluding to the argument made by the states in their brief that the statute itself states that people who there is no income requirement in the statute, which is notable because with respect to a lot of the other exemptions, there is an income requirement in the statute. So the states argued there, and I think persuasively, that the regulations should not be interpreted... the compensation regulations should not be interpreted in a manner that takes an employee who is otherwise performing exempt duties and otherwise would be exempt and to cause them to be become non-exempt by virtue of their compensation. And I agree that that should be a guideline for the courts here as they are deciding the proper construction of these regulations. These regulations should be harmonized with the statute. The statute does not require any element of compensation to be shown if people are otherwise performing exempt duties. The Department of Labor came up with the salary basis test many years ago, but it did so as a proxy for setting a minimum amount to determine if someone is really performing exempt duties or not. So you get rid of the income test in order to consist with a statute, get rid of the income test, as well as the salary basis test. No. Or just the salary basis. I'm not saying that. I'm drawing the illustration based on the argument made by the states that the regulations should be harmonized in a manner consistent with the statute. And I think that our construction here, that a very high day rate with a predetermined amount over 455 that was guaranteed and never subject to reduction, does that particularly with respect to a worker who is paid so highly because the DOL first came up with the salary basis test as an indicator for when someone is really exempt. There are several opinions from this court. The Zanikos opinion, the Smith opinion from last year, very clearly say high compensation is a strong indicator of exempt status. What's the difference between the reg and the statute that you're saying? Yes. I'm talking about the differences between the regs and the statute. And what I'm saying here is, I think that as this court decides how to harmonize these regulations with the statute, this issue of very high compensation should be taken into effect. And that's one of the reasons why I think if there's a question in the court's mind about whether my construction or Mr. Sullivan's construction is right, I think that is an indicator as to why my construction should be followed. Mr. Crow, two quick questions. Do you have a response to what I took to be Mr. Sullivan's unequivocal statement that a day rate is inconsistent with this exemption? And number two, where does the FLSA, I mean, not the regulations themselves, specifically confine employers to the terms of the agreement? I thought that language was removed from the regulation when it was amended. Yes, Your Honor. Yes. So, that word requiring an employment agreement, that heretofore had been in Regulation 604, relating to the use of the word guarantee in 604. And the reference to employment agreement was deleted, I believe, in 2004 when the regulations were revised. And so, it clearly here, in order to have a predetermined amount or a guarantee, you clearly do not have to have a written employment agreement. What the courts have said is it merely must be a predetermined amount not subject to reduction that is consistent with the Hughes court and the Coates court in terms of its interpretation or construction of the word guarantee in 604. Just quickly, factually, counsel, when you keep saying either guarantee or predetermined amount not subject to reduction, where in the record will we see that Mr. Hewitt had a guarantee and it was not subject to reduction? What are you relying on? Yes, Your Honor. So, I'm relying on four things specifically. First is record site 415 through 416, which is our offer letter telling him how much that we were going to pay. Next is record site 423 through 490, which were his pay stubs, which by the way said that we were paying him on a base salary amount. Those pay stubs confirmed that he was in fact being paid in accordance with the offer letter. And he testified that he always looked at those pay stubs, so he always knew in advance how much he was going to be paid. He was always paid consistently with what had been told. We also have record site 654, which is the declaration of Hewitt's tenure at McNeil, where he talks about Hewitt's pay stubs that predetermined daily sum that remains consistent regardless of the hour's work in the day or the quality of the work. And finally, record site 761, which there's been some question about how the amount of the day rate was reduced a couple of times during Mr. Hewitt's tenure. It was reduced to deal with the fact that the price of oil had gone down, there was an economic slowdown in the industry. So, Helix informed their workers in advance that on their next shift or at some shift in the future, they would be paid less. That gave the workers the opportunity to decide if they wanted to He did continue his employment, and so I think what these words require is that you can't let the person do the work and then change the rate after they've done the work and pay them less than you've told them. That's a reduction that's impermissible. On the other hand, the evidence in this case is he was always told in advance how much he would be paid in advance of the work. Sorry, I believe Judge Jones asked a second question that I did not get to. Oh, and that is, can a day rate never satisfy the salary basis test? I think that is absolutely wrong. I think that the Sixth Circuit's opinion in the Hughes case, they clearly indicate in that case that even though the day rate was less than 455, there was a fact question about whether there was a sufficient guarantee under 604. So, they said, well, we don't see that you've satisfied 602, but you can still have this day rate satisfy the to the district court to evaluate that issue. But our view is that a day rate that is sufficiently high over the 455 amount or the minimum threshold can satisfy 602, and a day rate that is less, if it otherwise complies with 604, can satisfy 604. Let me ask you about the 601. It is the beginning basic regulation for what we're talking about, overtime. And it says that an employee with an annual compensation of at least 107 or 32, which Hewitt actually, you know, had more than twice that, is exempt under this section. You know, the only qualified. A customarily and regularly performed exempt duties of executive administrative professional. None disagree that he did that. Why doesn't this case stop there? With 604, it's only added a group to that one that he's already qualified for. And that's the group that get the minimum guarantee plus extra. He never thought it doesn't apply to him. What's wrong with that theory? Judge Winter, I agree with you entirely. We complied with 601. We do not have to comply with 604. 604 talks about a minimum guarantee plus extras. 601, on the other hand, contemplates there being an amount paid on a salary basis and other compensation being paid as well. And the other compensation can be three or four times the amount, other compensation, to get up over the $100,000 threshold. The other compensation can be wildly more than the base amounts paid. And 601 doesn't say anything about that additional compensation being paid to get over the $100,000 threshold as having to comply with any reasonable relationship test. Nor do the DOLs implementing statements when it came out in 2004 with the highly compensated employee regulation. It talked about additional payments and cash up payments, other payments being made by the company to the employee to exceed the $100,000 threshold. Never was there any statement about any of those amounts having to satisfy any reasonable relationship criteria. So that reasonable relationship criteria is found in 604B. But both, the only two circuit courts who have addressed this issue, to my knowledge, which are the First and Second Circuits in the and 604 are talking about different groups of employees. And so as such, there is no reason why an employee who satisfies 601 should also have to satisfy 604. Is 604 not limited to employees making between $23,660 and $100,000? Is it not limited to those relatively lowly paid employees? Yes, that's exactly our position. 604 is intended to apply to persons making less than $100,000 a year and specifically in the day rate context, someone whose day rate is less than 455. And that's the only reason that, in our view, 604 should be considered. Well, 604 could theoretically apply to someone making $200,000 if they did not satisfy the other two elements of 601 to be a highly compensated employee, correct? Yes, if for some reason they don't otherwise comply with 601, then 604 could apply. If for some reason they don't fully comply with 602, then 604 could apply. Again, it is viewed I mean, that's what happened in the Hughes case. 604 is specifically stated to be like a safety valve type provision that can apply if someone is not otherwise exempt under these regulations. Mr. Crow, I take it that you disagree with the Department of Labor's August 2020 application of this test? Yes, Your Honor, we do. We do think that the Department of Labor was following the opinion issued by the court in this case. And likewise, the employees... I think Judge Ho made this point. I mean, you can say it was following. It didn't have to follow it. Does that represent a deviation in the way that the Department applies the test to a day rate worker? So no, Your Honor. I mean, Judge Ho is right about that. They don't say the only reason we find this is because of the Fifth Circuit's opinion in this case. They do not say that. I will say there is an additional criteria that's important, and that is the employees in that case who petitioned were not paid over $100,000 a year. So the highly compensated employee regulation did not apply to those employees, and I do think that is relevant here. But you agree the Labor Department opinion is about the highly compensated employee provision. The very first paragraph of the opinion talks about that, right? Yes, it does. But as I read the letter, these workers were part-time workers, and they were basically saying if we worked full-time, we would be paid over $100,000 a year. But the Labor Department said, well, you are part-time, and the fact of the matter is you were not paid. You did not receive over $100,000 a year. And so for that reason, the highly compensated employee regulation does not apply. I'll ask you about 602. It seems to me that I think the record shows it's going to fluctuate wildly how much the person earns each week based on how you meet the without regard to the number of days or hours worked requirement in 602. Okay, so that is in 602A1, and our view of that is that that language, without regard to the number of days or hours worked, that language means that the full predetermined amount must always be paid regardless of the number of days or hours worked by the person. So in other words, you cannot reduce the predetermined amount based on the number of days or hours worked. And that is so because I think that's the proper construction of the sentence. I also mentioned that 602A1, that whole provision is dealing with what exceptions can be made such that lesser amounts can be paid because it says subject to the exceptions in paragraph B, and those exceptions in paragraph B below talk about when there can be deductions. So what is the predetermined amount? What is the predetermined amount? Yeah, there's absolutely no allegation of any deductions or reductions ever being made in this. You always got paid the full predetermined amount. What is the predetermined amount in this case? The predetermined amount in this case is, was the minimum of nine, the lowest day rate was 963, and the, at times it was paid much more. I think the highest was over $1,300 today. But you agree, Mr. Crump, Chief, may I just ask one more? Yes. An associate at your law firm, Mr. Crump, someone says on January 1, what's your salary for the year? They can give the number, and it's a lot of money, and they'll say what the number is. If someone asked this plaintiff, what's your salary for the upcoming year? He wouldn't be able to answer that question, right? Because it depends on how many days he's out there each week. So a point here is that salary is not the same as being paid on a salary basis. Okay, 602 really requires you to evaluate being paid on a salary basis, and I think that could be important in terms of answering the question that you've got. I think there is no doubt under 602, the salary basis test, that this all or part of language specifically authorizes additional amounts to be paid, right? And that's the issue here. Well, just like if someone at your firm could get a bonus, for sure, but they would also say, my salary is X dollars. I know going into 2021, my salary is X. This plaintiff really has no idea, right? Isn't some of that answered by 601A2, which allows catch-up payments? Yes, your honor. And just constantly, here's the thing about the predetermined amount is the amount that's not subject to reduction. If we had an associate at our firm who came on and said, okay, got a salary of $65,000 a year or $100,000 a year, all right, that is all going to be subject to reduction if they don't work as expected, right? That's one of the big differences between the salary and being paid on a salary basis. Here, there's no question that the predetermined amount, which was at least, you know, 963, was never ever subject to reduction for any reason and was always said he didn't have to work a day for it. He just had to work a minute in one week. Actually, the testimony the plaintiffs have put in, he just had to wake up on the boat and he was entitled to that full amount. One quick follow-up. You mentioned the Labor Department opinion wasn't about highly compensated. I understand it says they may be paid more than $10,000 per week. It's still subject to a pay rate that's still not exempt. Right? Am I misreading that? It says they may be paid more than $10,000 per week. I'm sorry. I don't have that in front of me. I'm not familiar with that. I was referring to, I think, on the last page where it talks about how they were part-time and their income did not exceed $100,000. I think we have your argument. Two minutes, Mr. Sullivan's time, please. I believe it was 10, Chief Judge. Did you say 2 or 10? 2. No, she said 8. Oh, I'm sorry. I'm adding 2 to your time. So kind of you. I'm sorry. I'm not familiar with this. Okay. May it please the Court, I have a few points in rebuttal. The Department of Labor letter, the employee earned $273,000 a year, if you just calculate based on the weeks that they said the employee earned. $273,000. The Department of Labor thinks the highly you know, it doesn't matter. I mean, it matters. The highly compensated employee exemption requires the person to be paid on a salary basis. That's right in Rule 601. I want to hit one point. Mr. Crow said a couple of times there's no dispute that there were no deductions from his pay. I agree there were no improper deductions from his pay, but page 209 of the record, which is Mr. Hewitt's deposition, he agreed that under and reading a policy from Helix, that if he committed negligence on the job, they could deduct from his pay. That is pay reduction based on the quality of work. That's not allowed. So it's not just that there were no deductions. I agree there weren't, but they could have deducted based on the quality of his work. And they certainly paid him on the quantity of his work because the quantity of his work was how many days he worked. Mr. Crow said that he always looked at his pay stubs before. You get a pay stub after you perform the work. It's a record of what you earned. That's the point of a day rate too. You don't know how many days you're going to work. It's not exactly predetermined. So what happens is when you show up to know how many days you got paid for that week, you got to multiply the days in the work week by the day rate that you have. And that's why I think Judge Wiener said something. He goes, the guaranteed amount is the day rate by the number of days worked. That's not a salary. Nobody thinks a salary is something that fluctuates like every day, depending on days worked. And if there's any question about this, it's not been brought up, but go look at the very first salary basis regulation, 29 CFR 600. The shortest period of payment that will meet the salary basis requirement is one week, not one day. And so I, yeah. Mr. Sullivan, I just don't understand that because how do you, I mean, 604B clearly says you can have the earnings computed on an hourly, daily, or shift basis. And it has two examples. And the reason, one reason I think 604 doesn't even apply is the both subsection A, which we've heard nothing about today and subsection B plainly apply to people who are not arguably within the HCE 601 by their own terms, which makes me think they're both alternatives to 601. And both of the examples in these refer to the minimum salary plus catch-ups or extras. So daily basis can't, you just can't exclude that from the possibility of being covered here. You can't exclude it from being covered under rule 604. If there is a component of the pay that is based on a minimum weekly guarantee. Computed, computed, and guaranteed as far, I mean, his offer letter said 963 per day computed paid biweekly. Okay. And if you go with that, Judge Jones, then every person who makes an hourly wage who gets a biweekly paycheck over the minimum will get paid. You can't have a limiting principle to what you're suggesting. That's because, no, my limiting principle is that 604B doesn't apply to 601 or 602. All I'm doing, Judge, is reading the text. I'm reading the text that a salary basis is regular receipt each pay period on a weekly basis of a predetermined amount, 963, which is all a part of the compensation, which is not subject to reduction. And your client admits that he got that throughout his period of employment. I agree that he received an amount over the salary basis. That reading of the regulation puts the dependent clauses ahead of the subject clauses. It cannot be that no one in history read that regulation that way before a year ago. There is, because, and if you go back to the Weiss report from 1949 and the Stein report, where they talk about why they have that predetermined amount, language in there. This is a post-determined amount that is paid with regard to the day's work by the employee. It cannot be salary basis. But 601 is not dependent on the annual being something above 47. Well, it is. It's for people who make less than 46,000. But 601 is someone whose total compensation is at least the 90 percentile, which is at relevant time over 100,000. So that is why 60, you don't have to go to 604B and a rigid daily when the total paid according to 602 added up to the 90th percentile or above. Judge Johns, I'm enjoying this, but under rule 601, you have to pay the person on a salary basis. I'm doing that. You disagree. I'm disagreeing that Mr. Hewitt was paid on a salary basis. That's where I'm disagreeing. Because, I mean, we can't use 601 to say that 602, you know, fits. 602 does not fit. And 602 has to be a component of 601. He was not paid a salary. I mean, just rhetorically speaking, speaking in terms of the reg, 601 specifically incorporates 602. It specifically does not incorporate 604. Right, but neither does any exemption. And they all have to be paid on a salary basis. 602, that's why you have 604 as an alternative, which is a minimum guarantee plus extra. I think that's, I mean, Judge, obviously we disagree on this one, but this is. Well, so do the first and second circuits. No, those are totally, those are weekly guarantees. This is, this is a pure, this is an employee paid purely by the day. And I think I want to hit it. You asked Mr. Crow, you said, I think Mr. Sullivan said unequivocally, employee paid on the day rate, you know, can't meet a minimum guarantee. I said an employee paid purely by the day. This is an employee paid purely by the day. So there is no weekly guarantee of salary. There is no meeting under 604. So, I mean, Judge Weiner. 601, as I said before, is not on the salary or day rate. It talks about annually. 107, 432 annually is deemed exempt if he regularly performs executive duty. And that doesn't have anything to do with distinguishing a day rate from a weekly rate or an hourly rate. And this one was paid weekly or more extensively, which means bi-weekly. And it just doesn't matter once you comply with 601 A and B and the A and N. Judge, I just respectfully disagree looking at the text of the law. What, I mean, I have no other, I don't know if I'm going to be able to make that point again, but 604 B applies in a situation where an employee whose pay is on an hourly, daily, or shift basis has some component of a weekly guarantee of which there's none here. Well, so Judge Weiner has a point that 601 says total annual compensation. The problem, I think, is that 601 B defines total annual compensation as requiring a salary basis. So here's my question. Is there anything in any text of executive exceptions, but not highly compensated? Is there anything in the text that draws that distinction? Nothing in the text, nothing in the regulations. No, it's a perfectly plausible policy view, but I would prefer it personally, but it's not in the text. It is not in the text and it is so simple. Like, I mean, I really think what this case in large part comes down to is this. It's just like Judge Weiner said, it's apples and oranges. How is someone making $200,000 entitled to overtime? Let's, I just beg this court, if you're going to pull my client out, say you're splitting the circuits and say you're going against the text, because that's what you're going to do. And that's all I want. I want, you know, tell me why I lose and tell me because you can't read this text faithfully and apply it the other way. If you lose, we are joining other circuits, not creating a conflict. That's exactly what I'm afraid, Judge, that you're going to say all that. Like they're saying Litz and Anani applies. It does not apply. I mean, I'm driving my head against the wall because for four years, my client, I respect what the court's doing, but look, Congress could just say, we don't want to give overtime to $200,000 a year or more employees. They could, I mean, instead of doing legal contortions, which is what they want you to do, just apply the text as written. I'm a lawyer who doesn't take cases without, like I took the case, I looked at the laws, like, okay, it's done. Like, why am I here? It should have settled. So I appreciate the court's time. And I, if there, you know, I see that I have 45 seconds left. So I'll give you back some balance because Judge Owens, Don't worry. If we take the, uh, that approach that we're talking about, Judge Wiener's approach to first circuit and second circuit, we will split with the sixth circuit, right? The sixth circuit has said what I'm saying about the first and second circuit. So that's a guarantee. You go on head on, not just that, think about the unintended consequences. You'll get to do a cert petition one way or another, Mr. Cert petition or response, Mr. Sullivan. Judge Jones, if you look at the distinguishing between Litz and Anani, I assure this court, I will defend it. I will defend it to the max. There's no split with Litz and Anani and you will not have anything to worry about. But you started to say, counsel, there would be unintended consequences. Can you finish that thought? Just the hourly commission says everything. Those employees are now going to be out here. And Mr. Crow with an event of arguments and say they received $1.55. So it's over. You do not know where you're headed for if you say that these are the day rate employees. Here are the day rates, salary. Thank you. I appreciate it. It's been a lot of fun, actually. Thank you. We have your case under submission. The court will be in recess this afternoon and will resume tomorrow morning at 9 a.m.